The judgment of the court (Slidell, J. recusing himself, having been of counsel,) was pronounced by
Eustis, C. J.
This cause has already been before this court on an appeal taken by one of the defendants, Theodore O. Stark, and is reported in 3d Ann. 71. The present appeal is taken by the co-defendant, Mrs. Wilkinson. The action is brought by the plaintiff, for the use of the Trustees of the late Bank of the United States of Pennsylvania, upon certain notes drawn by the said Stark and the appellant. The judgment from which the present appeal is taken discharged the defendant, Mrs. Wilkinson, from all personal liability on the notes sued upon, upon the ground* that being executed and made payable in the State of Mississippi, they were of no binding effect under the laws of that State, she being at the time a married woman. The judgment, however, subjected her property to a mortgage executed by her in this State to secure the payment of the notes. From this judgment Mrs. Wilkinson has appealed. The plaintiff has joined in the appeal, and asks for a personal judgment against Mrs. Wilkinson for the amount of the notes sued on; subjecting the property mortgaged to payment, &c.
On the former appeal, taken by the co-defendant of the present appellant, it was contended that the assignment of the notes sued on to the present plaintiff was null and v.oid, and that no action could be maintained against the defendant by the present plaintiff upon them; but we came to a different conclusion — which we do no.t find any sufficient grounds for disturbing, upon a very thorough consideration of the subject.
The principal argument has been directed to the disability to contract which the appellant labors under, resulting from her condition as a married woman.
By a judgment of the late Court of the First District, dated the 19th of April, 1841, the appellant, then residing with her husband in the parish of Plaquemines, was separated in property from her husband at her instance. In the petition filed by her, she states that her marriage took place in Mississippi, in 1837, with a view of an immediate removal to the domicil of her husband in the parish of Plaquemines, to which she accordingly removed, with her slaves and moveables, immediately after the celebration of her marriage.
It is contended by the counsel for the defendant and appellant, that her liability on the notes signed by her must be tested by the laws of Mississippi, because the notes were made in that State, and are payable there.
The capacity of the appellant to contract in ordinary cases, she being a married woman, domiciliated in this State, must be determined by our laws. The incapacity of a married woman to contract, results from the relations which the law has established between husband and wife, which are personal; and the laws creating the disabilities of minors and married women have always been classed *373 among those which are called personal, or, in the technical language of the civilians, personal statutes, in contra-distinction to real statutes. Merlin’s Rep. verbo Autorisation Maritale. Augusta Insurance Company v. Morton, 4th Ann. 41.
Conceding that there is no general rule, in which all nations acquiesce, concerning the disability of persons to make contracts out of the country of their domicil, and that every nation is at liberty to determine as to the extent to which effect is to be given to foreign laws in its tribunals, the question presented by the facts in this case bring it, we think, within a principle which cannot be drawn in question. It is the case of a married woman, separated in property from her husband, domiciliated in Louisiana, who goes into an adjoining State and makes a contract. This is the hypothesis presented by the defendant, who has not shown any of the circumstances attending the supposed execution of the notes at the place they are dated, or any act done by her, except the alleged signing of the notes. How far this hypothesis is supported by facts will be examined afterwards. A married woman of this State goes into an adjoining Stale, and makes a contract involving a large amount of money. The rule post hoc ergo propter hoc is a key to the purpose of the leaving the place of her domicil, and the party with whom the contract is made, knowing her place of residence, is a privy fo it.
The whole current of the decisions in Louisiana have negatived the possibility of defeating the effect of our laws which regulate the personal relations of its inhabitants by a mere temporary transit to another State, and any other conclusion would render these laws, and the necessary control of the State over the persons and property of its citizens, entirely nugatoiy.
But it is assumed, that the notes were executed in the State of Mississippi; this is denied by the plaintiff’s counsel, who contend that it results from the evidence that they were not executed at the place they purport to be. They are dated at Woodville, Mississippi, on the 1st of March, 1842. It appears that they were given in renewal and in lieu of certain other notes held by the Planters’ Bank of Mississippi, and to secure these latter notes the defendant, authorized by her husband, then present, appeared before the judge of theparish of Plaque-mines, the place of their domicil, and executed a mortgage on slaves, on the 1st March, 1842, the day on which the notes sued on purport to have been executed at Woodville, some two hundred miles distant from her place of residence. In the act of mortgage, which is in authentic form, the presence of the appellant and her husband at the time of its execution is formally stated, and the fact must be considered as proved.
It also appears, that the notes sued on were given in pursuance of an agreement made between Stark and the plaintiff, subsequent to their date; and that the original notes held by the Planters’ Bank were not delivered up until the 30th of March, 1842.
These facts, we think, conclusively establish, that the notes were not executed at the place and time they import; and that, in the absence of any proof, the court is bound to assume, that they were executed at the domicil of the defendant, and at the time of their delivery were post-dated.
In order to secure the payment of these notes, bearing date the 1st of March, 1842, the appellant executed another mortgage with Stark, before the judge of the parish of Plaquemines, on the 11th of April of that year, which contains the following clause: “The said Theodore Stark and the said Mary Farrar Stark, wife of Robert Andrews Wilkinson, hereby expressly reserve to them *374 selves the right and privilege, at their option, of construing the above contract according to the laws and usages of the State of Mississippi, where the said notes were drawn and are to be paid.” This clause, it is contended, authorizes the appellant in insisting that her liability should be tested by the laws of Mississippi. A clause resembling, though not identical in its terms with this, was inserted in the act of mortgage given to secure the other notes. Our impression is, that the construction of the contract, and the capacity of the party to contract, by reason of her personal disability are two distinct things, and that it wmuld be doing violence to its plain and obvious sense to suppose that any right was thereby reserved to defeat its purpose, by reason of any personal disability to make the contract. The reservation of the right of construing the previous subsisting contracts according to the laws of Mississippi, at the option of parties, admits, we think, the capacity of the parties to make them. Any other construction would be a mere snare for the party for whose benefit the mortgages were given.
Our conclusion is, that the obligations of the appellants, dependant on her personal condition, and resulting from the notes sued upon, must be determined according to the laws of her domicil, and not those of the State of Mississippi.'
It is next objected, that the debt created by the notes sued on is not binding upon the appellant, by reason that they were executed and delivered in the absence of the husband, and without his knowledge, participation, or authority, and that they are consequently null and void; and it is contended, that the subsequent mortgage, given, with the authority of the husband, to secure the notes, does not cure this want of original authority on his part to his wife’s execution of the notes.
We will examine the authorities relied upon by the counsel for the defendant in support of this position.
The article 124 of the code provides, that the wife, even if she is separated in estate from her husband, cannot alienate, grant, mortgage, or acquire, either by onerous or encumbered title, unlesss her husband concurs in the act, or yields his consent in writing. This article is said to indicate, that a contemporaneous consent in writing or joining is required on the part of the husband, in order to give validity to the acts of the wife. The article is a copy of the article 217 of the Code Napoleon, and it is contended, that the jurisprudence of France supports that construction. Pothier, in his treatise on the Marital Power, says, that the authorization of the husband may be given before the contract, by which the wife is authorized; provided, that in the contract she declares herself to be authorized by her husband; but it will not render the contract valid by the husband’s authorization being given after the contract, though the wife should declare herself in the contract itself authorized by her husband, in the expectation of subsequently obtaining his consent; the act itself, being absolutely null for want of authorization, cannot be confirmed by an authorization subsequently given, inasmuch as that which is nothing is not susceptible of confirmation. Therefore he says, it would seem, that if we adhere to the rigor of principles, the authorization subsequently given is of no effect. But he adds, that Lepretre, loe. eit., has i-eported two decisions which determined, that an authorization by the husband subsequent to the execution of the act of the wife gave validity to it; and that this author and Lebrun were both of opinion, that these decisions did not determine that the subsequent authorization rendered the act valid from its date, ui ex tunc, but only that it was binding from the day of the authorization, ut ex nunc, as it were by the consent of the parties, which is supposed to continue as long as a change of will is not manifested. Hence, he concludes that if, before *375 the authorization is given, one oí the parties dies, or loses the use of reason, or shall have declared a change of will in relation to the contract, the authorization given subsequent to the contract would not render it binding upon the wife; and further, that an act thus established by the subsequent consent of the husband produces no mortgage except from the date of the authorization, it being only valid from that day. Bernardi, the annotator of the edition of 1806 of Pothier’s works, adds in a note, that the nullity resulting from the want of authorization being at that time, under the code, only relative, the subsequent ratification of the act renders it valid. Toullier lays down the general proposition, that if the authorization required be special, it may be given by an act anterior to the contract, but not by an act posterior. But this proposition is qualified by what follows: “The contract which the wife may have made, declaring that she was authorized by her husband, though she was not,- will not be rendered valid by the ratification, or subsequent authorization of the husband, unless the wife shall have ratified it also, by virtue of the authorization.” Vol. 2, sec. 648.
In vol. 7, sec. 571, the opinion of this author is clearly in favor of the effect of the subsequent ratification in giving validity to contracts made by the wife.
The case oí Bellonde, cited from Dalloz, 1828, p. 128, was one in which the defect of authorization was attempted to be cured by a subsequent approbation of the act by the husband, without the concurrence of his wife, and to her prejudice.
In the case of Saugnier v. Villars & Co., Dalloz, 1839, p. 249, it was held by the court of cassation, that the subsequent ratification of the husband, without the concurrence of the wife, does not remove the defect of an obligation, contracted by the wife without the express consent of the husband.
Duranton, vol. 2, sec. 546, says, that the contracts of the wife, made without the authority of the husband, like that of any other person incapable by law of contracting, may be made valid by a ratification. The ratification maybe made during the marriage by the wife, duly authorized; but without this authorization there can be no ratification. The confirmation may be express or tacit by a voluntary execution of the contract.
Indeed, among the modern writers on this subject, some of the most eminent are of opinion, that the subsequent ratification of the husband alone suffices to give validity to the unauthorized contract of the wife, without her intervention or concurrence in the act of ratification, differing, but only in this respect, from the established jurisprudence of the court of cassation, which, we think, commands universal assent.
The opinion of Merlin is to the same effect, loe. (At.; he says all the modern authors concur in it. Under the Code Napoleon, as we have seen by the decisions of the court of cassation, the same jurisprudence prevails which had been followed at the Chatelet and in the Parliament of Paris, requiring the concurrence of the wife in the subsequent act of ratification on the part of the husband, in order to give validity to the contract of the wife made without his authority. This rule assumes that the authority of the husband need not precede nor concur in the act of the wife, but may be subsequently given expressly or tacitly.
We therefore conclude, that the exposition of the jurisprudence of France has been correctly given by the late Supreme Court in the case of Gravier v. Poyclras, 13 L. R. 183, and that the consent of the husband, or, in his absence, of the court, may be given before, at the time, or after the making of the unauthorized contract on the part of the wife.
*376 In relation to our own jurisprudence, we are not aware that the point has ever been decided by our courts. On principle, we see no reason why the nullity of the contract of the wife, resulting from the want of authorization on the part of the husband, should not rest upon the same rule as that of other nullities which are in the interest of persons and strictly relative. Under the Roman law, the sale of the property of the minor by his tutor without observing the legal formalities, was absolutely null. But if, in the accounts rendered by the tutor to his ward on obtaining the age of majority, the proceeds of the sale had been invested or expended, the approval of the accounts was held to be a ratification of the sale, and the purchaser could not be disturbed. In this case, the purchaser is not even a party to the act of ratification; and yet his purchase was held to be affirmed. Such is our own jurisprudence, and it would be an anomaly to exclude from the operation of this just and salu.tary rule the case of a contract by the wife unauthorized by the husband, which was subsequently ratified by both. The article 1779 appears to us to presuppose the application of this rule. It provides that the authorization of the husband to the commercial contracts is presumed by law, if he permits her to trade in her own name. Whether the acts of the husband and wife, in the present case, amount to what is considered a ratification equivalent to an original authority, is next to be considered.
We have before stated that the notes sued on were given in pursuance of an agreement between the plaintiff and the co-defendant Stark. This agreement does not bear the signature of the appellant nor that of her husband, and we have seen that the notes do not bear his signature. Nor is there any writing from him authorizing her to enter into the contract or to sign the notes. But the agreement was made apparently in her interest and for her benefit, as well as for the benefit of Stark, inasmuch as they were both bound by the notes which the notes sued on were given in lieu of. Accordingly, we find the appellant and her husband availing themselves and carrying into effect this agreement, by executing a deed of trust with Stark of a plantation and slaves in Mississippi, to secure the payment of the new notes at maturity. This deed was acknowledged before a magistrate in the parish of Plaquemines on the 9th of April, 1842, and bears date the 29th of March previous, and is signed by the appellant and her husband. Afterwards, to wit, on the 11th of April, 1842, by a public act before the parish judge of Plaquinines, the appellant, aided and expressly authorized by her husband, jointly with the co-defendant Stark, mortgaged a certain number of slaves, reciting in the act the previous deed of trust on the Mississippi property, and declaring the mortgage to be given more effectually to secure the full and punctual payment of the same notes, which are set forth in the act.
It is sufficient to state that these two acts were made in furtherance of the agreement made by Stark, and that the securities given must be considered as in affirmance and execution of it, and that a ratification of the contracts of the wife, which the mortgage was given to secure, in the absence of all contrary proof, must be held necessarily to result from them. Having come to the conclusion, that so far as the authorization of the husband is concerned, the appellant is bound by his signature to the notes, it remains to consider the other objection made to the validity of her obligation by the learned counsel who argued this cause.
It is urged, -that a married woman cannot be a surety. The code provides that all persons may contract, except those whose incapacity is specially declared by law. These are persons of insane mind, slaves, those who are intei'dicted, *377 minors and married women. Article 1775. But the article 1779 provides that the incapacity of the wife is removed by the authorization of her husband, or in cases provided by law, by that of the judge.
The Spanish law rendered women incapable of making the contract of surety, considering it not becoming that they should be engaged in litigation about the suretyships they contracted. But there were eight excepted cases, in which a woman could bind herself as surety. One is, where she receives a price for becoming security ; another is where she becomes security in relation to her own business per su feche mismo, as where she becomes security for a person who had been security for her, &c. Partida 5, tit. xii, laws 3 and 4. These laws being repealed, the capacity of the married woman to make this contract must depend upon the provisions of our code.
The court of cassation has always held, that since the repeal by the Code Napoleon of the Sendius consultum Velleianum, prohibiting women from being sureties, a married woman could bind herself as surety for another, with the authorization of her husband. There is a great difference between a married woman becoming security for her husband and becoming security for a third person. The law views the first with distrust, on account of the interest of the husband in binding his wife ; but in the latter case, where the wife becomes surety for a stranger, the incapacity of the wife is removed by the authorization of the husband as in any other contract. Code 124, 1779. Under this view of the subject, we held that a married woman could become seeui-ity with the authority of her husband. Farrell v. Yoe, 2d Ann. 903.
It will be recollected that the notes were payable in the State of Mississippi, and that there is a clause in the mortgage by which the mortgagors reserve to themselves the right and privilege at their option of construing it according to the laws and usages of Mississippi. The notes on which this suit is brought — and there is another suit before us on the other notes embraced in the mortgage — are all promises to pay Joseph L. Roberts, attorney, or order, a certain sum stated in dollars, “for value received, payable in the notes of the Bank of the United States, and negotiable and payable at the offiee of discount and deposit of the Planters’ Bank of the State of Mississippi.” It is stated that the only indebtedness of the appellant on these notes is the value of the United States Bank paper at their maturity, that the' contracts were to pay in a certain description of bank notes, and that their value, when the notes sued on fell due, ought to have been rendered certain by evidence and would fix the amount which the plaintiff is entitled to recover in an action on the notes. The decisions in the State of Mississippi certainly support the principle as a general rule, in cases where the action is brought and the judgment rendered on obligations in writings of this character.
It remains, therefore, to consider the application of the rule to the case as it is presented to us for adjudication. This will require a statement of the facts in which the notes sued on originated, as well as of tho pleadings.
To begin with the latter. The plaintiff styles himself as suing for the use of John Bacon, Alexander Symington, and Thomas Robbins, Trustees of the Bank of the United States, under a deed of assignment, &c. The notes sued on, as we have seen, are made to Joseph L. Roberts, agent, or order. The defendant has pleaded that the sole consideration for which the notes were given, was six other notes drawn by her and her co-defendant, Theodore Starlc, for certain debts due then to the Planters’ and Agricultural Banks of Mississippi, which said notes were transferred to the plaintiff, for the use of said trustees.
*378 It appears in evidence that these notes were given by those banks in satisfacti° of debts due by them to the late Bank of the United States; and that by the assignment under which the trustees acted in receiving the notes they were bound to receive in payment notes of the Bank of the United States. By the evidence and by the argument of counsel before us, it appeal's that the obligations of the defendant could be paid and satisfied in those notes for the extinguishment of which the trust was in part created. It seems to us necessarily to result, that the debt evidenced by the notes sued on, being made payable in the notes of the Bank of the United States, the case is that of a debt contracted, payable in the obligations of the creditor himself, and not in those of another person; and that it stands before us exclusively on that ground, and that the obligations of each party are to be judged by the standards which such cases present. If a man sells an estate on time, the price payable in his own notes, the contract on the part of the purchaser is to extinguish so much of the creditor’s debt on a given day; if it is not so extinguished, by the fault of the purchaser, it seems to us clear that he necessarily owes the price, which he certainly is bound to pay unless he shall have given the creditor the benefit of its equivalent.
We have examined the decisions of the Supreme Court of the State of Mississippi, and are not satisfied that in a case of this kind, in principle, the conclusions of that court would vary from our own. The subject is one not free from difficulty, but we are not permitted to adopt any other rule than that which seems to us obvious and just, and resulting from the very natui'e of obligations, unless on positive decisions to the contrary of the tribunal of the last resort of the State, according to the jurisprudence of which the rights of these parties are to be determined.
The matters of defence, resulting from the consideration of the notes sued on, it is not necessary to recapitulate. They have been acted upon by this court in the case of Stark, 3d Ann. 70; and though again pressed upon- us in the argument of the present cause, we find nothing which requires any other notice than a reference to that case. It is sufficient to state that the debt, for which the notes sued on were given, was due by the defendants to the Trustees of the Bank of the United States, and that the present suit is prosecuted for their benefit, and that the notes are payable in notes of the Bank of the United States. For this reason we consider the judgment rendered in that case as correct; and that in this case judgment must be to the same effect, the plaintiffs consenting to take judgment payable in notes of the Bank of the United States.
It is therefore ordered that the judgment of the district court be amended. And it is further ordered that judgment be entered in favor of the plaintiff, Joseph L. Roberts, suing for the use of John Bacon, Alexander Symington, and Thomas Robins, Trustees of the Bank of the United States, under a deed of assignment executed on the 7th June, 1841,by said bank against the defendant, Mrs. Mary Farrar Wilkinson, for the sum of $8395 61, with interest at eight per cent per annum on $2736 from the 4th December, 1844; like interest on $2782 72, from the 4th April, 1845; and like interest on $2876 89, from 4th December, 1845, till paid. Throe dollars cost of protest and costs of suit, with special mortgage and privilege on the property mortgaged by the said defendant, with the authorization of her husband, by act before Gilbert Leonard, parish judge of Plaquemines parish,, and ex-officio notary public, on the 11th April, 1842. And it is further ordered that the said property be seized and sold to.satify said debt, together with interest and costs; the said defendant having *379 the privilege, until the day of said sale, of paying said debt, and interest, in notes of Bank of the United States. It is further ordered that the defendant pay costs in both courts.